THOMAS OREAR AND WM. C. BERKLEY, USE OF CLARK AND KELLOG, *vs.* SAMUEL McDONALD AND OTHERS, GARNISHEES OF MENIFEE AND SLAUGHTER.—*December* 1850.

A bill of exchange was not presented for payment, nor protested, until four days after its maturity. ·HELD: That this presentment was not within a reasonable time, and the drawers were discharged.

Whether the circumstances of any particular case are sufficient to dispense with demand and notice, is always a question of law, addressed to the judgment of the court.

If the facts on which this question arises be admitted, or undeniable, then it is exclusively a matter of law, to be pronounced by the court, but if the facts be controverted, or the proof be equivocal or contradictory, then the court hypothetically instruct the jury as to the law.

If the drawer had no effects in the hands of the drawee, from the time the bill was drawn until it became due, he is liable without proof of demand and notice.

But where the drawee has something equivalent to effects, or has made an express or implied agreement to accept and pay, or the drawer has any reasonable expectation that the bill will be accepted and paid, he is entitled to demand a notice.

The reasonable grounds required, are not such as would excite an idle hope or wild expectation, or a remote probability that the bill will be paid, but such as create a full expectation, a strong probability of its payment; such as would induce a merchant of common prudence and ordinary regard for his commercial credit, to draw a like bill.

There is no such stringent rule, as to require the drawee to have funds of the drawer in hand, at the maturity of the bill, sufficient for its payment, in order to entitle the latter to demand and notice.

If the drawer, at the time the bill should have been presented, had the right to expect, reasoning upon the state of facts connected with the transactions as they then existed between him and the drawee, that his bill would be honored, he is entitled to demand and notice.

The insolvency of the drawee, furnishes no excuse for the neglect of the holder, to demand payment and give notice of non-payment.

A bill for $3000, was drawn under the authority and assent of the drawees, upon the faith of consignments, to be made to them by the drawers. The drawees were advised of the draft and of a particular consignment to meet it, and they promised to honor it when presented. The consignment was received by the drawees, and disposed of for $7000, before the maturity of the draft. After consignments were afterwards made and other drafts drawn and accepted, so that at the maturity of the bill, the drawees had not funds sufficient to pay it, after payment of drafts subsequently drawn and accepted, HELD: That under these circumstances, the drawers were entitled to demand and notice.

The laches of the holders discharged the drawers; and the bill cannot be given in evidence on the counts, for money had and received.

APPEAL from *Baltimore* county court.

This was an *attachment* sued out by the appellant, to affect the funds of *Menifee & Slaughter*, in the hands of the appellees, as garnishees. The cause of action upon which the writ issued, was a bill of exchange, drawn at *New Orleans*, the 17th of December, 1842, by *Menifee & Slaughter*, upon *Clark & Kellog* of *Baltimore*, for $3000, payable to the order of *John W. Hunt*, at 70 days, and endorsed by *Hunt* to the appellants, *Orear & Berkley*. The garnishees appeared and pleaded *non*

*assumpsit* for the defendants, and for themselves, *nulla bona* of defendants, in their hands.

The following are the prominent facts proved in the case: The draft matured on the 28th of February, 1843, but was not presented for payment, or protested, until the 2nd of March, 1843. The drawees, *Clark & Kellog*, had given the drawers, *Menifee & Slaughter*, a written authority, to draw upon them for the usual proportion of goods, shipped by the drawers to them; that this usual advance was in 1842 '43, and since, three-fourths of the market value at *New Orleans*, of goods shipped thence. Under this authority, the drawers, between the 13th of December, 1842, and the 19th of January, 1843, made various shipments by the *Ponce*, the *Radius*, the *Adeline and Eliza*, the *Iowa*, and the *Abbey Baker*, the invoice value of which was, in the aggregate, $17,428.68, against which, between the 17th of December, 1842, and the 4th of February, 1843, they drew bills to the value in the aggregate, of $12,573.20, of these drafts, the one in suit was the second one drawn, and was drawn in anticipation of the shipment by the *Radius*. The drawees were advised of it, as also of the intended shipment by the *Radius*, by letter of the 19th of December, 1842, from the drawers, the receipt of which letter, the drawees acknowledged, and promised to honor said draft when presented. The shipment by the *Radius*, was received and disposed of by the drawees, by the 1st of February, 1843, for upwards of $7000. The goods received by the various shipments, were disposed of by the drawees for a sum, sufficient, after paying every other draft on them by the drawers, including all drawn subsequent to the one in suit, to leave a balance in their hands, applicable to this draft. When this draft matured, there were large consignments in the hands of the drawees, which ultimately produced enough to pay all subsequent drafts, and leave a balance for this bill. The firm of the drawers was dissolved on the 8th of March, 1843.

The plaintiff upon this testimony, asked two instructions to the jury: 1st. That if the drawees had, between the date and maturity of the bill in suit, accepted other bills, drawn on them

by *Menifee* and *Slaughter*, and at the maturity of the bill, had no funds to meet it, after paying the other bills thereafter drawn and accepted, and that said drawees are now insolvent, then the not giving notice of non-acceptance and non-payment of the bill in question, till the 2nd of March, 1843, will not prevent the plaintiffs from recovering. 2nd. If the plaintiffs cannot recover on the bill, they may, under the circumstances, recover, as for money had and received for their use.

The defendant asked the following two instructions: 1st. That the demand of payment, on the 2nd of March, 1843, was not duly made, and does not charge the drawers of the bill. 2nd. That if this bill was drawn under the authority and permission of the drawees, upon the faith of consignments to be made to them by the drawers, which afterwards, and upon presentation of the bill for payment, were received by the drawees; and if, after the drawing of the bill, and before and at the time of its presentation for payment, the drawees had funds of the drawers in their hands, as shown by the account, offered in evidence by the plaintiffs, then the drawers are not liable, unless the plaintiffs prove due demand for payment and due notice thereof, or that there was some sufficient manner of demand and notice. 3rd. That there is no evidence of any due demand of payment, and due notice of non-payment by the drawees, nor of any service of said demand or notice.

The court, (ARCHER, C. J. and LE GRAND, A. J.,) granted the defendants' prayers and rejected those of the plaintiffs, who, the verdict and judgment being against them, appealed to this court.

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK, J.

By WALLIS, for the appellants, and
By GEO. M. GILL and McMAHON, for the appellees.

The several prayers, clearly present the points urged in argument.

45    v.9

MARTIN, J., delivered the opinion of this court.

This case comes before this court on an appeal from the judgment of *Baltimore* county court.

This case originated in an attachment issued by the appel·lants against the appellees, as garnishees, to affect the funds of *Menifee* and *Slaughter* in their hands, and the claim sought to be enforced by this proceeding was founded on a bill of exchange drawn by *Menifee*, and *Slaughter*, or *Clarke* and *Kellog*, in favor of *J. W. Hunt*, for $3000, payable seventy days after date, and dated the 17th of *December* 1842, and of which the appellants were the holders. The garnishees appeared to this attachment, and pleaded *non assumpsit* by the defendants and *nulla bona* for themselves. The court below having rejected the prayers offered by the plaintiffs, and granted those presented by the defendants, the verdict and judgment were against the plaintiffs. From this judgment they have appealed, and the questions raised for our consideration by the record, are those which relate to the ruling of the court below, upon the points of law submitted for their decision.

The draft in this case was due on the 28th of February 1843. It is the unquestionable duty of the holder of a bill of exchange to which he impliedly assents upon receiving the bill, to present it for payment on the day of its maturity and to give notice to the drawer within a reasonable time of its non-payment. Any neglect or default in this respect, unless excused, affects the holder with *laches* and exonerates the drawer. It appears from the evidence offered at the trial of this cause by the plaintiffs, that this draft was not presented for payment until the 2nd of March 1843, four days after it reached maturity. Under such circumstances it is very clear, that if this comes within the operation of the general rule established by the commercial law, with respect to instruments of this character, the drawers would be considered as discharged. The correctness of this principle was not controverted by the counsel for the appellants. But it was contended, that there were no funds in the hands of the drawees to meet the draft; that the funds sent forward for this purpose were withdrawn and diverted from

their original destination by the drawers, before the maturity of the draft; that with this knowledge the drawers could not have believed and had no right to expect that their draft would be paid, and that in this predicament of the case the usual requisition of demand and notice was unnecessary according to the principle enunciated in *Bickerdicke vs. Bollman,* 1 *Term Rep.,* 405, as being only a useless form not calculated to change or improve the condition of the drawers. This is substantially the proposition insisted on by the counsel for the appellants. And the questions propounded by the prayers for the decision of the court below, were whether the facts and circumstances of this case as shown by the evidence, amounted in legal contemplation to a dispensation of demand and notice, so as to subject the drawers to responsibility on the bill, and whether if they were discharged from liability on the draft, there could be any recovery against them on the count for money had and received?

Whether the circumstances of the particular case are to be treated as amounting to a dispensation of demand and notice, is always a question of law addressed to the judgment of the court. In *Cathell vs. Goodwin,* 1 *Har. and Gill,* 470, the Court of Appeals, when inquiring if the drawer had, in that case, reasonable grounds to expect that his bill would be honored, say; "The reasonableness of such expectation is a matter for the court and not for the jury to decide. If the facts upon which the question arises be admitted or be undeniable, then the question becomes exclusively a matter of law to be pronounced by the court; but if the facts be controverted, or the proof be equivocal or contradictory, then it becomes a mixed question both of law and fact in which case the court hypothetically instruct the jury as to the law to be by them pronounced, accordingly as they may find the facts."

We proceed, therefore, to examine the facts in this case, in reference to which there is no dispute, or found by the jury to be true under defendants' prayers; but before this is done it is necessary to ascertain with precision the rule of law by which the case is to be governed as it has been explained, modified

and restricted by the courts since the decision pronounced by the court of the Kings Bench in 1786, in *Bickerdicke vs. Bollman,* 1 *Term Rep.* 405. A reference to a few of the leading cases will be sufficient for this purpose.

In *Claridge vs. Dalton,* 4 *M. and Selw. Rep.,* 230, *Lord Ellenborough* said; "That where there were any funds in the hands of the drawee, so that the drawer has a right to expect or even where there are not any funds, if the bill be drawn under such circumstances as may induce the drawer to entertain a reasonable expectation, that the bill will be accepted and paid, the person so drawing it, is entitled to notice." And *Mr. Justice Le Blanc,* also said: "That it is not necessary that the drawer should have effects or money in the hands of the drawee, either at the time the bill is drawn or when it becomes due. For if the bill be drawn in the fair and reasonable expectation, that in the ordinary course of mercantile transactions it will be accepted or paid when due, the case does not range itself under that class of cases of which *Bickerdicke vs. Bollman,* is the first."

The rule of law on this subject, is stated with great clearness and precision by Shaw, C. J., in *Kinsley vs. Robinson,* 21 *Pick,* 328. He says:

"It seems to be now the settled rule of law in an action by the indorsee against the drawer of a bill of exchange, if it appear that the drawer had no effects in the hands of the drawee from the time the bill was drawn till the time it became due, he is liable, without proof of demand and notice. But this is to be taken with some exception of special cases where the drawee has something equivalent to effects, or has made an express or implied engagement to accept and pay, or the drawer has, on any ground, a reasonable expectation that the bill will be accepted and paid. *Dickens vs. Beal,* 10 *Pet.,* 577."

In *Clopper vs. the Union Bank,* 7 *Har. & John.,* 102. The Court of Appeals when speaking of this rule, said, "a drawer who has no effects in the hands of the drawee, and has no reason to expect the bill would be paid when it became due, is not entitled to notice." Again, this court, in *Eichelberger vs.*

*Finley*, 7 *Har. & John*, 386, declared, "that the true rule, applicable to cases of this kind, appeared to be, that notice is dispensed with where the drawer, at the time when presentment should be made, had no effects in the hands of the drawee, or having such effects should withdraw them before presentment, and in neither case should have any reasonable grounds that his bill would be honored." And in the subsequent case of *Cathell vs. Goodwin*, 1 *Har. & Gill*, 471, the court, in defining what are the reasonable grounds required in such cases, by law, announce:

"That they are not such as would excite an idle hope, a wild expectation, or a remote probability, that the bill might be honored, but such as create a full expectation, a strong probability of its payment; such, indeed, as would induce a merchant of common prudence and ordinary regard for his commercial credit to draw a like bill."

The authorities to which we have referred, furnish us with the rule by which this case is to be decided. The right to demand and notice, does not depend upon the fact, that the drawers had, at the maturity of the draft, funds in the hands of the drawers, as ascertained by ulterior events, adequate to its payment. There is to be found in the adjudications on this subject, no such stringent rule. On the contrary, we consider the principle as now established, to be, that if the drawers, at the time when the bill should have been presented, had the right to expect, reasoning upon the state of facts connected with the transactions as they then existed between the drawers and themselves, that their bill would be honored, they were entitled to demand and notice. The drawing of a bill under such circumstances, is not to be treated as a fraud. And as the transaction before us is to be tested by this rule, we think it very clear, that a case is presented in which demand and notice were indispensible; for we are satisfied, after a careful examination of the facts, in reference to which there can be no dispute, that the drawers of this bill, throughout the entire period from the drawing of the draft up to the time when it became due, acted under the full expectation, honestly en-

tertained, and based upon reasonable grounds, that it would be paid by the drawees at its maturity. We will state some of the principal reasons by which we have been conduced to this conclusion.

That *Menifee & Slaughter* had the authority and permission of *Clarke & Kellog* to draw this bill of exchange upon the faith of consignments, cannot be questioned. It was directly proved by *Poumairot*, and recognized by the letter, to which he referred in his deposition, as well as by the letter of the 7th of January, 1843. It is true, that this authority was limited to three-fourths of the market value of the cargo at New Orleans. With respect, however, to the first draft, this agreement was not strictly adhered to; and the argument is, we think, legitimate, that this fact was calculated to impress upon the mind of the drawers the belief that the drawees would deviate from the strict letter of their authority, if it became necessary for the honor of the bill.

This bill was drawn on the 17th of December, 1842. On the 19th of the same month, the drawees were advised of this draft, and of a shipment by the *Radius* to meet it. A bill of lading, operating as a transmutation of the legal title from the drawers to the drawees, for one hundred hogsheads of sugar by the *Radius*, was also forwarded. The record shows, that this shipment by the *Radius*, was received and sold on time, for a sum exceeding seven thousand dollars, prior to the maturity of this bill. And we have the pregnant fact in the letter of *Clarke & Kellog*, referred to by *Poumairot*, and placed in the cause without objection; that the drawees acknowledged the receipt of the letter of advice of the 19th of December, and promised to honor the draft when presented. This promise may be regarded as equivalent to an acceptance of the draft. It has been urged, however, on the authority of the case of *Hoffman vs. Smith*, 1 *Caines' Rep.*, 157, that the acceptance of the bill does not render notice of non-payment necessary in a case where there were no funds. This may be true; but all must agree, that on the question, whether the drawers had the right to expect that their draft would be hon-

ored, it is a fact of the most commanding character. It rests on the plain proposition, that the drawers could not presume that the drawees would violate or evade their express engagement. And as a circumstance calculated to generate in the minds of the drawers the belief that their draft would be paid, it may be considered as conclusive, unless mitigated or explained.

It cannot be maintained that *Menifee* and *Slaughter* are to be treated as having fraudulently intercepted the funds against which this bill was drawn by their subsequent drafts, so as to place this case within the range of *Rhett vs. Poe,* 2 *How.,* 457. There is no similitude between the cases. In the case before us, large shipments were made to meet the subsequent drafts. These drafts although accepted were not paid prior to the maturity of this bill.

It is very manifest, we think, that the parties to this draft, both the drawers and drawees, contemplated that the shipment by the *Radius,* or so much of it as might be necessary, should be appropriated to its payment. We do not mean to say, that there was a technical appropriation of the fund produced by the sale of this cargo to this draft, but that this was the expectation of the drawers, as it certainly was the intention and purpose of *Clark* and *Kellog.* And it is therefore a fair inference, that if the shipments forwarded to meet these various drafts had proved inadequate, so that some of them would have remained unpaid, that the drawees looking to their express promise to pay this draft, and the implied understanding, that it was to be answered by the cargo of the *Radius,* would have honored it, had it been duly presented it even at the sacrifice of some other draft. Be this however as may, it is impossible we think, to doubt with this array of facts before us, that the drawers of this bill, both at the time when it was drawn and at the period of its maturity, had reasonable grounds for the expectation that it would be honored. They were therefore entitled to demand and notice, and the court below were correct in rejecting the plaintiffs' first prayer, and in granting the prayers of the defendants.

The condition of the case, as to the right of the drawers to demand and notice, is not altered by the fact assuming it to be true, that the drawees were insolvent. The insolvency of the drawees, furnished no excuse for the negligence of the holders of the bill, in this respect.                          ·    ⵏ

*Story on Bills,* sec. 306.   *Byles on Bills,* 148.

The plaintiffs' second prayer, raises the question, whether there can be any recovery against the defendants on the money counts, assuming that they were discharged from liability on the draft.

The court below were clearly correct in rejecting this prayer. There was no money paid by the drawees to the drawers for the purpose of being applied to this bill.   As in *Baker against Birch,* 3 *Camp. Rep.,* 107.   In *Penn vs. Flack,* 3 *Gill and John.,* 369, the note was exhibited and relied on as evidence under the money counts of an indebtment between the parties. But in this case, the drawers are absolved from responsibility on the draft, by the *laches* of the holders.   And *Judge Story in his Treatise on Bills,* when speaking of the obligation to present the draft for payment as soon as it has arrived at maturity, states the rule to be:   "That a default in this respect, will discharge the party, in respect to whom there has been any such default, and who otherwise would be bound to pay the same, from all responsibility, on account of the non-acceptance or non-payment of the bill, and will operate as a satisfaction of any debt or demand or value for which it was given." *Sec.* 112 and *sec.* 227.

**JUDGMENT AFFIRMED.**