## ANDREW ARMSTRONG *vs.* PHINEAS THRUSTON.

Where the defendant's signature to a note in suit is disputed, and a witness had stated that the signature was not genuine, it is competent for the plaintiff, on cross-examination, to prove by this witness, that there had been a *change* in the defendant's handwriting since the signature in question was written, and that his signature is heavier now than it formerly was.

But it is not competent for a party to introduce, at the trial, other papers, irrelevant to the issues, for the purpose of enabling a witness or the jury to institute a comparison of handwriting.

Where a firm, the makers of a note, failed and made an assignment of all their property for the equal benefit of creditors, and took the benefit of the insolvent laws, a demand *at the office of the assignee and trustee in insolvency is not sufficient,* but must be made on the makers or at their place of

Armstrong *vs.* Thruston.

business; their insolvency does not excuse the holder of the note from a compliance with the statute in order to charge the endorser.

A notice to an endorser informing him "that the note had not been paid, and that he would be held responsible for the payment thereof," without stating that *demand had been made on the makers*, is insufficient.

According to the well established practice in Maryland, and the uniform course of the appellate court, bills of exception must be considered wholly distinct from each other unless they contain sufficient words of connexion.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* brought by the appellee, as holder, against the appellant, as endorser, of a promissory note for $1257.54, dated October 28th, 1850, drawn by *Neale, Armstrong & Co.,* payable at six months to blank order and endorsed by the defendant and others. Plea, *non assumpsit.*

1*st Exception.* The plaintiff proved by McKee, one of the clerks of the firm of Neale, Armstrong & Co., that the note in question, drawn by them, was handed to him by a member of that firm, with directions to take it to defendant for his endorsement; that witness delivered it to defendant at his counting-room, and the latter handed it back to witness endorsed; witness did not see him endorse it, because he did not pay particular attention, but is confident he did endorse it, because it was not endorsed when handed to him and it was endorsed when handed back to witness by him, and to the best of witness' knowledge, there was no person in his counting-room but defendant and witness.

The plaintiff then offered in evidence the protest of the note, which, in reference to demand upon the makers, states that the notary "presented the said promissory note at the *place of business of Mr. Horwitz, the trustee for the matters thereof,* and demanded payment therefor, and was answered by *his brother,* "it cannot be paid;" and in reference to notice, that he "addressed written notices to the endorsers of the said promissory note, informing them *it had not been paid, and that they would be held responsible for the payment thereof.*"

The defendant then proved by Rowe, who was the defendant's book-keeper from October 1848 to August 1851, that he was familiar with defendant's handwriting, being in the habit

of seeing him write, during that period, almost every day; that in his opinion the endorsement on this note, purporting to be that of the defendant, was not genuine, and that the defendant writes a heavier hand. Whereupon the plaintiff, for the purpose of testing the accuracy of his judgment, in cross-examining this witness, produced certain papers with the words, "Andrew Armstrong" written upon them, and offered to show these words to him, and without disclosing or allowing the witness to examine the contents of these papers, to ask him whether these words were the genuine handwriting of the defendant; to which offer and evidence the defendant objected, and insisted that the same were inadmissible. But the court, (FRICK, J.,) was of opinion that the testimony was admissible, and permitted it to be given to the jury, and the witness thereupon said that three of these papers, so shown him, bore the genuine signature of defendant, and in regard to the fourth he had doubts about its genuineness. The defendant excepted.

*2nd Exception.* The defendant then proved by Mr. Savin, that he was well acquainted, and had been for several years, with defendant's handwriting, and in his opinion, and from his knowledge then acquired, the endorsement on this note, purporting to be that of the defendant, was not genuine, and that defendant writes a heavier hand. Whereupon the plaintiff, upon cross-examination, offered to prove by this witness, that there had been a change in defendant's handwriting within eighteen months past, but the defendant objected to the admissibility of such testimony without the production of some of defendant's handwriting within said period. But the court was of opinion the testimony was admissible and permitted it to be given to the jury. The witness then said the defendant's signature was heavier now than it formerly was. The defendant excepted.

*3rd Exception.* The plaintiff thereupon, for the purpose of testing, in the judgment of the jury, the accuracy of the judgment of the defendant's witnesses, as to defendant's signature and the peculiar characteristics thereof, as testified to by them, offered to prove by William Chesnut, that the words, "Andrew Armstrong," written upon the four papers offered in evidence

by the plaintiff, and mentioned in the first exception, were endorsements in the genuine handwriting of the defendant, to wit: (These papers are four promissory notes purporting to be endorsed by the defendant;) to which offer the defendant objected, but the court overruled the objection and permitted said endorsements to be proved by the witness, who testified that they were in the handwriting of defendant, and suffered the same to be submitted to the jury for inspection and examination. To this ruling the defendant excepted.

*4th Exception.* The defendant further proved by several witnesses, well acquainted with defendant's handwriting, that in their opinion the endorsement upon this note was not genuine; several of these witnesses, on cross-examination, stated, as the grounds for their opinions, that defendant's genuine signature was heavier and not so round a handwriting, and that particular letters, to wit, the "A," "t" and "g" in Armstrong were not like those in the genuine signature. The plaintiff then proved by several witnesses, acquainted with defendant's handwriting, that, in their opinion, said endorsement was genuine; and further proved by Mr. Horwitz, that Neale, Armstrong & Co., the drawers of the note, failed about the 7th of January 1851, and executed to witness an assignment of all their property for the equal benefit of all their creditors, and shortly afterwards applied for the benefit of the insolvent laws, and witness was appointed their permanent trustee. (This assignment and their insolvent papers were offered in evidence, but do not appear in the record.) Whereupon the defendant prayed the court's instructions to the jury:

1st. That no sufficient evidence of demand upon the makers of the note in suit to charge the defendant, as endorser, has been offered in evidence in this case, and that the plaintiff, therefore, is not entitled to recover.

2nd. That no sufficient evidence of demand upon the makers of the note in suit, and of notice to the endorser, has been offered in this cause, so as to charge the defendant as such endorser, and that the plaintiff, therefore, is not entitled to recover.

The court refused to grant these instructions, or either of

them, and to this refusal the defendant excepted, and the verdict and judgment being against him appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*William B. Perine* and *John Nelson* for the appellant, argued:

1st. That the court erred in permitting the evidence to go to the jury as stated in the *first* and *third* exceptions, 1st. Because it introduced into the cause papers not relevant and not properly in the cause, thereby raising new and collateral issues as to their genuineness.   2nd. Because it operated as a surprise to the defendant, who did not know that such documents were to be produced and was not prepared to show that they were not genuine.   3rd. Because the papers may have been selected from many others for the express purposes of this cause, on account of their bearing an accidental similitude to the alleged handwriting of the defendant, thereby misleading both the witness and the jury.   4th. Because the offer of the evidence was, in point of fact, an attempt to enable the witness and the jury to come to an opinion of the genuineness of handwriting by a comparison of the papers with the note sued upon, which is clearly inadmissible.   5th. Because the offer to prove the genuineness of the signature of the papers by the witness, Chesnut, was before any proof had been offered by the plaintiff of any knowledge by the witness of the defendant's handwriting, and before the defendant had any opportunity, upon cross-examination, of exploring the sources of his information.   6th. Because the witness, Rowe, was entitled to see the contents of the papers, or some part thereof, in order to enable him to express a fair and impartial opinion.   For these positions see 1 *Greenlf. on Ev.*, secs. 580, 581.   2 *Philip's Ev.*, (*Cowen's & Hill's* 3rd Ed. by Van Cott,) 254, 255, 256, 257.   1 *Nev. & Perry*, 1, *Doe vs. Newton*.   7 *Car. & Payne*, 596, *Waddington vs. Cousins*.   *Ibid.*, 548, *Bromage vs. Rice*.   11 *Adol. & Ellis*, 322, *Griffits vs. Ivery*.   8 *Gill*, 86, *Smith vs. Walton*.   9 *Cowen*, 112, *Jackson vs. Phelps*.   The same

Armstrong *vs.* Thruston.

rule in regard to the *comparison* of handwriting which prevails in England is recognised in this State. There can be no doubt such a comparison was attempted in this case; the papers were submitted to the jury purely for the purpose of *comparing* them with that in suit in regard to the *handwriting*. The witness, Chesnut, was not asked whether these papers contained the *peculiarities* in the handwriting which had been spoken of, but this was submitted to the *jury* for *them to decide,* and surely this is a *comparison of handwriting*. This case does not come within the decision in *Young vs. Horner,* 1 *Car. & Kir.*, 51; that case has gone a great way, but is clearly distinguishable from this. The decision there is, that you may *cross-examine* a witness to test the accuracy of his judgment in reference to *certain peculiarities* which (the witness,) said existed in the *genuine signature*; here no such question was asked the witness, but this was left to the jury, they were to *decide it*. The case of *Brookes vs. Tichborne,* 2 *Eng. Law & Eq. Rep.*, 374, is similar to *this, Young vs. Horner.*

2nd. That the court erred in permitting the evidence mentioned in the *second* exception to go to the jury, because the witness referred to papers bearing the defendant's handwriting without producing such papers.

3rd. That the court erred in refusing the defendant's prayers in the *fourth* exception, 1st. Because there was no evidence of any demand of payment of the note, so as to charge the defendant as endorser; the demand upon their assignee or trustee being, in law, insufficient; and 2nd. Because there was no *sufficient notice* to the endorser. *Story on Bills,* sec. 318 and *note,* 326, 346, 230, 279, 306. *Story on Prom. Notes,* secs. 237, 241 and *note* 4. *Chitty on Bills,* (11th Am. Ed.,) 330, 355. *Byles on Bills,* 158. *Bayley on Bills,* 240. 3 *Md. Rep.*, 256, Nailor vs. Bowie. 1 *Do.*, 66, Graham vs. Sangston. *Ibid.*, 511, Hunter vs. Van Bomhorst. 3 *Do.*, 210, Boehme vs. Carr. 4 *Do.*, 294, Farmers Bank vs. Bowie. 6 *Do.*, 10, Manning & Co., vs. Hays. It is objected that these prayers are based solely upon the evidence in the *fourth* exception, but we do not so read this *exception.* It says,

*"whereupon;"* that is, upon the *whole evidence in the cause,* and this exception is connected with the preceding ones by the statement that the defendant *"further proved,"* &c. But it has been decided, that if *no facts* appear in the record, and the *prayer* contains a proposition of law, this court will retain the exception, and act upon it. 2 *H. & J.,* 376, *Barnes vs. Blackiston.* If the court should reverse upon this fourth exception, *no procedendo* will be awarded, because it is clear the plaintiff cannot recover, there being no sufficient demand on the makers, and notice to charge the endorser. 8 *Md. Rep.,* 287, *Cline & Francis vs. Miller.*

*Levin Gale* for the appellee, stated that it must *affirmatively appear* that the plaintiff cannot recover, before this court will refuse a procedendo upon reversing the judgment; the appellee is not bound by the evidence of demand and notice contained in the *protest,* but may prove the sufficiency of the notice and demand outside of the *protest,* and this the plaintiff thinks he can prove, and should be allowed to do so under a procedendo, in case the judgment should be reversed. He then argued:

1st. That the evidence excepted to in the first three exceptions was properly received, because the witness examined in chief by the defendant, having testified that the signature of the endorsement on the note sued on was not genuine, on account of its want of certain peculiarities, it was competent, on *cross-examination,* to submit other signatures to the witness, to test his accuracy, by showing that genuine signatures wanted the peculiarities specified by the witness, and to exhibit such writings to the jury for that purpose. 1 *Car. & Kir.,* 51, *Young vs. Horner.* 2 *Eng. Law & Eq. Rep.,* 374, *Brookes vs. Tichborne.* 1 *Gallison,* 175, *Smith vs. Fenner.* We do not attempt to prove the handwriting by a *comparison of hands,* but disclaim such a purpose. The handwriting was *proved* by at least *one witness,* whose testimony is *unimpeached,* and we merely attempted, on *cross-examination,* to test *the accuracy* of the judgments of the witnesses for the defendant, and this it was competent for us to do. But these papers were admissible upon another principle, viz: that being once in evidence without objection, the jury must consider them.

2nd. That it was not necessary to state, in so many words, in the offer of the testimony of Chesnut, that he was acquainted with the handwriting of the endorser, the offer to prove that the signature was genuine, sufficiently showing that fact; the testimony being objected to for other reasons. The objection, if to the knowledge of the witness, should have been made more clearly, when it would have been removed. But the testimony itself shows that he did have knowledge, and the other side should have searched the witness, if they doubted his knowledge.

3rd. That the defendant's *first* prayer was properly rejected, because it took away from the jury the questions whether Horwitz was the *agent* of the makers, and also whether the place where the demand was made, was not, in fact, the then place of business for the transaction of the co-partnership affairs, and so properly made. *Byles on Bills*, 158. The assignment of all the property constituted the trustee their agent, and gave the endorser security, so that demand was unnecessary. 7 *Wend.*, 165, *Mechanics Bank vs. Griswold.* 9 *G. & J.*, 31, *Duvall vs. Farmers Bank.*

4th. That the *second* prayer was properly rejected, because it included the proposition of the first prayer, and if that were properly rejected, the court would have stultified itself in granting the second prayer.

5th. That the fourth exception does not set out the whole evidence, and, therefore, the court cannot say whether the prayers were properly rejected or not, and cannot, therefore, reverse the rulings on these prayers. The other bills of exception are not *incorporated* and made part of this, by *express terms*, as they ought to have been. 4 *Md. Rep.*, 273, *Burtles vs. The State.*

BARTOL, J., delivered the opinion of this court.

This is an action instituted by the appellee, as holder of a promissory note, against the appellant, as endorser. The defences set up were: first, that the handwriting of the defendant's endorsement was not genuine; secondly, that there was no demand of payment upon the drawers; and lastly, that the notice to the endorser, *Andrew Armstrong*, was insufficient.

In the course of the trial below, several questions of evidence arose, the decision of which forms the subject of the 1st, 2nd and 3rd bills of exceptions. We think that the objection of the appellant to the evidence stated in the 2nd bill of exceptions is not well taken. That evidence was competent and proper to go to the jury. It was not only unnecessary, but would have been clearly inadmissible for the appellee to have introduced into the cause other handwritings of the defendant, for the purpose of showing that his handwriting had undergone such a change as was spoken of by the witness. And, for the same reason, we are of opinion that the Superior Court erred in admitting the evidence stated in the 1st and 3rd bills of exceptions. It is not competent for a party to introduce, at the trial, other papers irrelevant to the issues, for the purpose of enabling a witness, or the jury, to institute a comparison of handwriting. This rule of law rests upon the soundest reasons. It is established by the English authorities, and has been approved and adopted in Maryland. See 8 *Gill*, 86. *Doe vs. Newton*, 1 *Nev. & Per.*, 1, and same case in 5 *Ad. & El.*, 514. *Bromage vs. Rice*, 32 *Eng. C. L. Rep.*, 625. *Griffits vs. Ivory*, 39 *Eng. C. L. Rep.*, 104. 1 *Greenleaf's Evidence*, secs. 580, 581. 2 *Phil. Ev.*, (*Cowen & Hill's 3rd Ed.*, 1849,) 254, 255, 256, 257.

The 4th bill of exceptions presents the questions of the sufficiency of the demand and notice proved in this cause. The law is well settled, by repeated adjudications in this State, that to entitle the plaintiff in such action to recover, he must aver and prove *a demand upon the maker for payment of the note at its maturity, and his failure to pay, and also that notice of such demand and non-payment was given to the endorser.* The responsibility of an endorser is contingent, it arises under the statute, and to fix it, the requirements of the statute must be complied with by the holder. *Graham vs. Sangston*, 1 *Md. Rep.*, 66. 3 *Md. Rep.*, 202 and 251. 6 *Md. Rep.*, 5.

In this case, the only proof of the demand and notice is found in the notary's certificate, which states "*that he presented the said promissory note at the place of business of Mr. Horwitz, the trustee for the matters thereof, and demanded*

*payment therefor, and was answered by his brother,* 'It cannot *be paid.'*" The note was drawn by the firm of Neale, Armstrong & Co., composed of John Thomas Neale, George B. Armstrong, and Edmund Landis. The firm failed in business on or about the 7th day of January 1851, and executed to Mr. Horwitz an assignment of all their property, for the equal benefit of their creditors, and shortly afterwards applied for the benefit of the insolvent laws, and said Horwitz was appointed their permanent trustee. A demand at the office of Mr. Horwitz is not sufficient, it ought to have been made on the makers, or at their place of business; their insolvency does not excuse the holder from a compliance with the statute. *Story on Bills, sec.* 318, *note* 1. *Story on Prom. Notes, sec.* 241. 9 *Gill,* 360.

The exception to this rule, found in cases of *agency,* by no means applies to this case; the relation of Mr. Horwitz to the makers of this note, was not that of agent, in the sense spoken of, but simply that of assignee or trustee, which imposed on him no duty to pay the note, or authorized him to do so; and no case has been found where a demand of payment on a person standing in that relation to the maker of a note, has been held sufficient. The notice given to the endorsers in this case, which is also proved by the notary's certificate, is clearly insufficient. It simply states that the note "had not been paid, and that they would be held responsible for the payment thereof." The law requires notice of the *demand on the makers,* as well as of the non-payment of the note. *Graham vs. Sangston,* 1 *Md. Rep.,* 60.

Entertaining these views, we consider that the court below erred in refusing the prayers of the appellant, contained in the fourth bill of exceptions. Whether we confine our attention to the evidence contained in that exception alone, or consider all the other evidence presented in the other bills of exception and appearing upon the record, the result in this case will be the same. We deem it proper, however, to say, that according to the well established practice in Maryland, and the uniform course of the appellate court, bills of exceptions must be considered wholly distinct from each other, unless they contain

sufficient words of connection.    *Gist's Adm'r vs. Cockey &*
*Fendall,* 7 *H. & J.,* 134.

*Judgment reversed.*