## H. G. BUEHNER *v.* R. H. SEHLHORST ET AL.

*Action on Note—Liability of Endorsers—Presentment and Notice—Waiver—Defective Pleas—Waiver of Objections*

The insolvency or bankruptcy of the acceptor of a draft or the maker of a negotiable instrument does not excuse presentment for payment and notice of non-payment, even though the

acceptor or maker is a corporation, of which the endorsers are officers, and to which they have loaned their endorsement.

pp. 479, 480

In an action against the endorsers on a note, a prayer stating that unless the court sitting as a jury finds that the note was presented for payment and notice given the endorsers, the verdict must be for defendants, unless the court finds that they waived such presentment and notice, "and" also that the note was signed for defendants' accommodation, was erroneous, since either of these facts would dispense with the necessity of presentment and notice.                           pp. 480, 481

In an action against the endorsers on a note, a prayer was not erroneous because it failed to submit to the court sitting as a jury the question of waiver of presentment and notice of dishonor, when there was no evidence of such waiver.          p. 481

Testimony by a witness as to the interest to be paid on a note was properly excluded, when he testified that he knew nothing of the agreement as to interest except what he was told by others.                           p. 482

A motion *ne recipiatur* as to certain pleas, based on the lack of proper affidavits thereto, was properly overruled, when not made until more than three years from the filing of the pleas and joinder of issue thereon, and after plaintiff had gone to trial on the facts averred therein.                    pp. 483, 484

*Decided January 14th, 1926.*

Appeal from the Baltimore City Court (ULMAN, J.).

Action by H. G. Buehner against R. H. Sehlhorst and Adolph Reus. From a judgment for defendants, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*J. Britain Winter,* with whom was *Edward A. Strauff* on the brief, for the appellant.

*Abram C. Joseph,* with whom was *Joseph Grinsfelder* on the brief, for the appellees.

Pattison, J., delivered the opinion of the Court.

An action was brought in this case against the appellees by the appellant upon the following promissory note, endorsed by the defendants:

"$1,000.00.                    Baltimore, April 21st, 1921.

On demand six months after date we promise to pay to the order of H. G. Buehner,

One thousand————————00/100 Dollars.

at 244 N. Liberty St.

No. ............     Due ............10% interest.

Value received.

Interstate Optical Company,
R. H. Sehlhorst, Sec'ty."

To the declaration each of the defendants filed the pleas of never indebted and never promised as alleged. The court, sitting as a jury, rendered a verdict in favor of the defendants and a judgment for defendants' costs was entered thereon. From that judgment this appeal was taken.

In the trial of the case four exceptions were taken: the first to the action of the court in overruling a motion of *ne recipiatur* to the pleas, filed March 17th, 1925; the second and third to its rulings on the evidence, and the fourth to its rulings on the prayers.

The appellant, Buehner, testified that in October, 1920, he was asked by the appellees, Sehlhorst and Reus and one Fangmyer, all of whom were officials of The Interstate Optical Company, to call to see them, which he did, and at their request loaned to them one thousand dollars, on which they agreed to pay him ten per cent. interest. The loan, as he says, was secured by a promissory note for that amount, payable at the expiration of six months with interest at ten per cent., signed by all of them and delivered to him. When the note became due he was asked by Sehlhorst to renew it. This he agreed to do and, upon being paid the sum of fifty dollars as interest, at the rate of ten per cent., a new note, the one upon which the suit in this case was brought, dated April 1st, 1921, was given to him. This note was neither

signed nor endorsed by Fangmyer. When asked if The Interstate Optical Company signed the first note, the witness said he was not able to say whether the company signed it or not, but stated that the money was loaned to them personally and not to the company; that they mentioned the stock of the company to him, but he told them he did not want any stock; and that all he has received upon the loan, outside of the fifty dollars paid to him as interest, is the sum of sixty nine dollars and forty cents paid to him as dividend from the bankrupt estate of The Interstate Optical Company, that company having gone into bankruptcy in September, 1921, a short time before the second note became due. Upon cross examination Buehner testified that he knew that the appellees and Fangmyer were interested in The Interstate Optical Company; they told him so; that he read the note after it was given to him and said it was signed by "The Interstate Optical Company, R. H. Sehlhorst, Secretary," but he had first seen the signature of the appellees on the back of the note; that he did not present the note for payment to the company or its receivers; that he instructed his attorney, Mr. Strauff, to file the note in the bankrupt proceedings. He could not recall whether he told Messrs. Sehlhorst and Reus that the note was not paid. He thinks he did not, as he does not remember seeing them after it became due. But they knew as much as he did about the note. "I loaned the money to them and they took the money."

Sehlhorst, secretary of The Interstate Optical Company, testified that he signed the note as secretary of the company and that the money was for the company, and not for his personal use. He was not present when the first note was signed, though he subsequently endorsed it. This note he said was endorsed by Fangmyer, at that time an official of the company. He further testified that he "was not notified that the maker of the note, The Interstate Optical Company, had not paid it." He said, at the time he signed the note, "ten per cent. was not on the note." The interest, as he

understood it, was to be paid by the use of a type setting machine belonging to the company, for which company Buehner was doing certain work. The machine was to be used by him until the note was paid. Then it was to go back to the company. He was not present, however, when this arrangement was made, but was told of it by others. He, though its secretary, disclaimed any special knowledge of the company's financial condition at the time of the signing of the note. He was much of the time upon the road, though he knew so early as March, 1921, before the last note was given, that the company was not meeting its obligations. He was still secretary of the company at the time it was adjudged a bankrupt corporation.

The appellee, Reus, vice president of The Interstate Optical Company, likewise stated that the note in question was the note of the company; that he, too, did not know that "10%" was in the note, but was told that the interest was to be paid by the use of the machine, as stated by Sehlhorst; that while he was vice president of the company and attended most of the weekly meetings of the directors, he did not know the financial condition of the company in March, 1921, but was of the impression that its "financial condition became bad perhaps the last two or three months, something like that"; that there was some discussion of the company's financial condition about the time of its adjudication in bankruptcy. He also testified that he was not present when the first note was given to Mr. Buehner. "Mr. Fangmyer made that arrangement. I did not have any conversation with Mr. Buehner about borrowing this one thousand dollars as far as I know. I do not remember whether I was present when the renewal note was given." He, too, never received any notice that the note had been presented and dishonored.

Buehner, when called in rebuttal, testified that when the money was first loaned, Mr. Sehlhorst, Mr. Reus and Mr. Fangmyer were all present. Mr. Reus said "How long do you think we will need this money?" He said, "We will give it back to you in thirty days." Mr. Sehlhorst said,

"No, * * * six months, and then we will give him fifty
dollars interest, ten per cent." That he then went down
to the bank, got the money "and took it back and loaned it
to Mr. Sehlhorst, Mr. Reus, and Mr. Fangmyer and gave
them their money in their hand. They were there present
in their office on Liberty Street. * * * When this note
came due in April, 1921, I went up to see Mr. Sehlhorst and
told him I would like to have one thousand dollars. He
said 'No, renew the note.' He gave me fifty dollars interest.
* * * It was a check. I do not remember whether it was
signed by The Interstate Optical Company."

Upon the conclusion of the evidence the plaintiff offered
three prayers. His first and second prayers were granted.
His third was refused. The defendants offered four prayers.
The first and second asked for a directed verdict for the
defendants, the first because there was no evidence legally
sufficient to entitle the plaintiff to recover, and the second
because of a want of evidence legally sufficient under the
pleadings. These prayers were refused. Their third and
fourth prayers were granted as modified by the court. The
action of the court in refusing the plaintiff's third prayer
and in granting the defendants' third and fourth prayers,
as modified, constitutes the fourth bill of exception.

By the third prayer of the defendants the court was asked
to instruct itself, sitting as a jury, that if it should find that
the defendants, officers of The Interstate Optical Company,
knew, or should have known, of the financial condition of
the corporation, and that it was adjudicated a bankrupt
before the maturity of the note, and that said adjudication
was based upon the assent of the corporation, in which assent
the defendants participated, then and in that event the
defendants waived, impliedly, whatever rights they might
have had to presentment and notice of dishonor of the note.
This prayer, we think, was properly refused.

By the great weight of authority the insolvency or bank-
ruptcy of the acceptor of a draft or the maker of a nego-
tiable instrument does not excuse presentment for payment

and notice of non-payment. *Armstrong v. Thurston,* 11 Md. 148; *Orear v. McDonald,* 9 Gill, 360; *Keiser v. Butte Creek Co.,* 48 Cal. App. 38; *Nolan v. Wilcox Motor Co.,* 137 Tenn. 667; *Haynes Automobile Co. v. Shepherd,* 220 Mich. 231, 25 A. L. R. 960; *Grandison v. Robertson,* 231 Fed. 785; *McDonald v. Luckenbach,* 170 Fed. 434; and cases cited in A. L. R. note to *Haynes Automobile Co. v. Shepherd, supra.* The theory for so holding seems to be that the contract of the party secondarily liable is that he shall be liable to pay the instrument only in the event that it is presented to the principal obligor and notice given of its dishonor, and he is entitled to stand on this contract; and also upon the ground that the maker, though insolvent, may find some way of making payment, notwithstanding his insolvency. And this rule holds in cases where the endorsers are officers of the insolvent or bankrupt corporation, to which they have loaned their endorsement. *Nolan v. Wilcox Motor Co., supra; Haynes Automobile Co. v. Shepherd, supra;* and other cases above cited, as well as cases cited in said note to *Haynes Automobile Company v. Shepherd, supra.*

The court, sitting as a jury, was told by the defendants' third prayer, as modified, that the defendants' liability was only that of endorsers and, unless the note was presented to the maker for payment and dishonored, and notice thereof given to the endorsers, the verdict should be for the defendants, unless the court, as a jury, should find that the defendants waived such notice *and* unless it should further find that the said note was signed by the Interstate Optical Company for the accommodation of the defendants. By this prayer, if the note was not presented for payment and notice of non-payment given to the endorsers, the defendants, the verdict was to be for the defendants, unless the court, sitting as a jury, found not only that the defendants waived such presentment and notice of dishonor, but also found that the note was signed by the company for the accommodation of the defendants. If the court found the waiver it was not essential for it to find that the note was signed by the com-

pany for the accommodation of the defendants, or if it found that the note was so signed by the company it was not essential for it to find said waiver, for in such case presentment of the note and notice of its dishonor was not required. Consequently we must hold this prayer bad.

By the defendants' fourth prayer, as offered, the court was asked to instruct itself, sitting as a jury, that as a matter of law the defendants were only liable as endorsers, and if it found that the defendants did not receive notice of non-payment, even though they knew of the insolvency of the principal, then the verdict must be for the defendants. This prayer was evidently offered upon the theory that the defendants were endorsers merely and that the note was not signed by the corporation for their accommodation. The court refused to grant this prayer, evidently because it did not submit to its findings the question whether the note was signed by the corporation for the accommodation of the defendants, and it added to the prayer the following: "Unless the court, so sitting, shall further find that said note was a note signed by the Interstate Optical Company for the accommodation of the defendants."

It will be observed that this prayer, unlike the third prayer of the defendants, does not submit to the finding of the court, sitting as a jury, the question of waiver. The court, in submitting that question by its modification of the third prayer, must have held that there was evidence of waiver legally sufficient to be considered by it. If such was the case, the finding of that question should have been submitted by its fourth prayer, though upon our examination of the evidence we are of the opinion that there was no evidence tending to show waiver of presentment and notice of dishonor legally sufficient to be considered by the court, sitting as a jury. Therefore such omission did not render the prayer bad.

As we have said, the second and third exceptions are to the rulings of the court upon the evidence. Buehner, when

upon the stand, was asked whether in the case of either the
first or second note he extended any credit to The Inter-
state Optical Company. The court's refusal to permit this
question to be answered forms the second exception. If the
answer to this question could in any way have reflected upon
the issue whether the note was signed by the corporation
for the accommodation of the defendants, the court's action
in not allowing it to be answered cannot be regarded as a
reversible error, as it was in effect fully answered by the
witness both before and after this ruling of the court.

In the third exception the defendant Reus was permitted
to testify as to an agreement between him and Buehner re-
garding the interest to be paid on the note, differing from
that stated in the note. This evidence should not have been
admitted, if for no other reason, because, as stated by him,
the witness knew nothing of the agreement to which he tes-
tified except what was told him by others.

The first exception, the only one now to be considered, was
to the action of the court in overruling a motion *ne recipiatur*
to certain pleas filed, the affidavits to which were claimed
not to be in conformity with the requirements of the statute
in suits brought under the Speedy Judgment Act, in that
they failed to state what portion, if any, of the plaintiff's
claim was admitted and what portion, if any, was disputed.

A like situation existed in *Traber v. Traber,* 50 Md. 1. In
that case the court was asked to enter judgment in plaintiff's
favor because of the defect in the affidavit. The motion was
overruled and the case proceeded to trial, which resulted in
a verdict and judgment for the defendant. The Court said:

"The plaintiff was therefore not injured by the ruling
on his motion. The pleas were valid in themselves, the
only objection of the appellant was that they were not veri-
fied by affidavit, as required by the Act of 1864. But their
truth was established by the verdict of the jury, and the
want of an affidavit or the insufficiency of the affidavit accom-
panying them became altogether immaterial.

"We express no opinion, therefore, upon the question

whether the affidavit was or was not in conformity with the requirement of the 7th section of the Acts of 1864. The course pursued by the appellant in joining issue upon the pleas, and the result of the trial upon the merits, preclude him now from raising the question of the regularity of sufficiency of the affidavit, or asking a reversal of the judgment on account of any defects therein.

"If the appellant desired to raise that question on appeal, his proper course was to refuse to join issue on the pleas, and suffer judgment by default. After the verdict against him on the merits, he cannot be heard to say there was no sufficient plea."

In *Hutton & Co. v. Marx Bros.*, 69 Md. 252, suit was brought upon an open account. The defendant pleaded "Never indebted, never promised and limitations." An affidavit was made to the plea of limitations, but not to the other pleas. The plaintiff joined issue on the first two and replied to the last. By leave of the court, the plaintiff withdrew the joinder of issue and the replication and moved for a judgment by default for want of a sufficient affidavit of defense under the Act of 1886, chapter 184, known as the Speedy Judgment Act. The court entered judgment by default and an inquisition of damages was taken at the bar. On appeal to this Court, it was there said: "In this case, the plaintiffs joined issue on two pleas, and filed replications to the third. From these steps, it is a conclusion of law that the plaintiffs elected to go to trial on the facts averred in the pleas; there would otherwise be no significance in thus pleading to them. And if they elected to go to trial on the pleas, they necessarily waived their right to move for judgment."

In the case before us each of the defendants filed the pleas of "Never indebted and never promised as alleged," Reus on the 17th day of December, 1921, and Sehlorst on the 7th day of January, 1922, at which times issue was joined thereon. The case was thereafter continued on the docket until the January Term, 1923, when it was removed therefrom,

but was thereafter reinstated upon plaintiff's petition, on the 25th day of December, 1924. It was not until the 16th day of March, 1925, more than three years from the filing of the pleas, and the joinder of issue thereon, that the motions *ne recipiatur* was filed. After joinder of issue on the pleas and his election to go to trial on the facts averred therein, and the lapse of time above mentioned, the plaintiff has thereby waived any and all rights that he at any time may have had to judgment by default.

Because of the error of the court in granting the defendant's third prayer as modified, the judgment appealed from will be reversed.

> *Judgment reversed and new trial awarded, appellee to pay the costs.*