## Moriarty v. Howard.

(Decided Feb. 12, 1935.)

630

DYSARD & TINSLEY for appellant.

WOODS & WOODS and YAGER & WOODS for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

On September 26, 1933, Catherine Moriarty instituted this action against T. M. Howard, Jr., alleging in her petition that on January 1, 1930, T. M. Howard, Sr., and defendant executed and delivered to her a note of that date whereby they each promised and agreed to pay to her, one day after date, $4,134.37 with interest at 5 per cent. per annum; that thereafter and within about a week they delivered the note to her; that it was understood by all parties that defendant and his father, T. M. Howard, Sr., were each unable to pay the note upon its maturity date and therefore it should be payable at such time in the future as plaintiff might desire; that a short time after the execution and delivery of the note, T. M. Howard, Sr., died and T. M. Howard, Jr., was duly appointed and qualified as administrator; that plaintiff has repeatedly made demand upon defendant to pay the note, but that no part of same has been paid. She prayed for judgment against the defendant, individually, for the principal of the note with interest.

By answer defendant denied that he executed and delivered the note to plaintiff, but admitted that his father executed and delivered same to her, but alleged that his (defendant's) name was not thereon. In a second paragraph he alleged that some time after his father signed and delivered the note sued on and while his father was very old and sick, plaintiff came to the home of his father and insisted that the note be renewed or something paid on it; that at that time and in the presence of his two sisters, plaintiff was informed that defendant would be the personal representative of his father and that the note would be taken care of out of

the liquidation of his father's estate; that several days after his father signed the note, and upon plaintiff's insistence and request, he placed his signature on the note as a witness to his father's signature and to indicate that he would look after same after his father's death and would take care of it out of his father's estate, but by inadvertence or error on his part, as was well known to plaintiff, he failed to qualify his indorsement on the note; that plaintiff knew at all times that he did not mean to bind himself personally; and that the error was mutual between him and plaintiff. The third paragraph of his answer consisted of a plea of no consideration.

By amended answer he alleged that the note sued on was made payable at the Ashland National Bank at Ashland, Ky., and that it was never presented to that bank for payment or payment demanded during banking hours on the day the note became due, and that it was not protested for nonpayment, and by reason thereof he was discharged from all liability.

By amended and substituted answer, defendant, in addition to a traverse of all the allegations of the petition, pleaded in a second paragraph that he was discharged from liability as an indorser under the provisions of sections 3720b-70 and 3720b-64, Ky. Stat., because the note was never presented for payment at the Ashland National Bank, where it was made payable. In a third paragraph he alleged that his name was signed on the back of the note long after its due date, and that the loan to his father had long been completed, and that neither he nor his father received any consideration for the signing of his name thereon. In a fourth paragraph he reiterated in substance the allegations of the second paragraph of his original answer respecting the purpose for which he signed the note, and asked that the note be so reformed that his signature should be qualified by adding the words, "As witness to the signature of Tom Howard only."

By reply, plaintiff denied the material affirmative allegations of the answer, and further alleged that plaintiff placed his name upon the note after its maturity date and that it was understood by all parties, including defendant, that T. M. Howard, Sr., was not able to pay the note at the time it was delivered and

would not be able to pay same at its maturity date or at any time the note would be due and payable or at the time payment thereof could or should have been demanded, and for that reason presentment of the note for payment at its maturity date or at the time when demand was made, or should have been made, would have been futile and unnecessary, and for these reasons presentment was waived; that notwithstanding these facts plaintiff did present the note to T. M. Howard, Jr., and demanded payment thereof within a reasonable time after his name had been placed thereon as indorser.

On motion of defendant the case was transferred to equity and by agreement of parties was referred to the master commissioner to hear proof and report his findings from the whole case.

After hearing the evidence, the commissioner filed a report in which he summed up the facts appearing in evidence concerning the execution of the original note by T. M. Howard, Sr., and the renewals thereof. His summary, which we find to be in accord with the evidence, is, in substance, that some time prior to 1922, T. M. Howard, Sr., borrowed the principal sum involved from Catherine Moriarty and executed his note, which was renewed from year to year about the first of January and the accrued interest would be included in each renewal; that plaintiff and the Howard family were close friends and no security was required on the note, except that Mrs. Howard signed all notes with her husband until her death in March, 1929, shortly after which T. M. Howard, Jr., first appears in the transaction by signing his name across the back of a renewal note; that there is no evidence to show that he had anything to do with the transaction prior to that time, and the undisputed evidence shows that he was away from home and did not know of the indebtedness until after his mother's death; that it was a custom for the note to be renewed as of January 1, although it was sometimes executed after that date; that T. M. Howard, Jr., signed his name across the back of the first note indorsed by him after March 7, 1929, and this note was payable one day after date. The note was not paid, and Mrs. Moriarty, who was visiting in Philadelphia about the first of January of the following year, had her nephew write a renewal note, which is the note sued on payable one day after date, and it was mailed by Mrs. Moriarty

to Ashland for execution; that the note was executed by T. M. Howard, Sr., signed on the back by T. M. Howard, Jr., and mailed to the payee at Philadelphia some time prior to January 10, 1930, as evidenced by her letter of that date acknowledging receipt thereof. This, like the former note, was made payable at the Ashland National Bank, and it is admitted that it was never presented to the bank nor protested for nonpayment.

The report then refers to the three defenses relied on by the defendant, namely: (1) That he only signed the note as a witness to his father's signature at the request of Mrs. Moriarty because she believed that Mr. Howard's mind was impaired and she anticipated some trouble about the note after his death; (2) that there was no consideration for his signing the note; and (3) that it was not presented for payment and was not protested for nonpayment. That there was an issue on all these questions except the last, and as a reason for nonpresentment of or protesting the note for nonpayment, plaintiff claimed that presentment and notice of nonpayment were waived by defendant; that during the hearing defendant presented an amended answer pleading the failure of plaintiff to list the note for taxation, but exception to the filing of this pleading was sustained, because defendant had filed in the record a statement showing that Mrs. Moriarty was a nonresident of the state of Kentucky and therefore the note did not have a taxable situs in this state; that after all the evidence was heard, plaintiff offered an amended reply which was rejected because it did not raise any issues not made by former pleading.

The commissioner found that defendant had not sustained his first and second defenses, and without going into detail as to his reasons for such finding, it may be said that it is sustained by the evidence.

Question is made by counsel as to whether or not this became a demand note because it was signed by the indorser after the date of maturity. The commissioner refers to this question, but correctly concludes that in either event it was the duty of the payee to comply with the law respecting presentment for payment, unless that requirement had been waived as claimed by her. He discusses at length authorities bearing on the question and the character of proof necessary to estab-

lish waiver of presentment for payment, and concludes that plaintiff failed to sustain the burden of establishing the alleged waiver of presentment. He further found that the note was not presented to defendant for payment and demand was not made upon him within a reasonable time; that the proven facts and circumstances indicate that the reason for failure to present the note and to have it protested for nonpayment was due to lack of knowledge of plaintiff of the necessity of such action, rather than to anything defendant said or did.

Plaintiff filed exceptions to all of the commissioner's report adverse to her, and defendant filed exceptions to so much of the report as was adverse to him. On final hearing the chancellor overruled exceptions of the respective parties to and confirmed the report of the commissioner and adjudged that plaintiff's petition be dismissed, and she is prosecuting this appeal.

From what we have already said concerning the correctness of the commissioner's finding with respect to the first two defenses as enumerated in his report, it will be seen that the only question to be determined is whether appellee waived presentment for payment.

Waiver of presentment may be either express or implied, and since there is no claim or showing of express waiver, the waiver, if any, must be implied from representations, acts, or conduct upon the part of appellee. We find it stipulated that between January 1, 1930, and July 22, 1930, the date of the death of T. M. Howard, Sr., there was not sufficient money in the Ashland National Bank to pay the note if it had been presented for payment. While we infer from the record that the maker of the note was insolvent, there is no direct evidence bearing on that question, nor is there any evidence showing that appellee was acquainted with his father's financial affairs, except that he learned after the death of his mother that his father owed the note to appellant on which his mother had been indorser. Mrs. Moriarty testified to statements made to her by appellee which would indicate that he did not expect the note to be paid during the life of his father but that it would be paid out of the latter's estate after his death. The original answer, as well as his evidence concerning his conversation with Mrs. Mo-

riarty leading up to his signature on the note, would indicate that that was her view of the matter as expressed to him.

On August 4, 1930, appellee wrote appellant a letter acknowledging receipt of a letter from her respecting the death of his father. He referred to debts due appellant and "Billie," and stated, "We (evidently referring to the heirs) had a meeting on Thursday night and at present are unable to do anything"; that his father's will, which was to be probated, provided that all the debts first be paid, and that as executor he would see that she got every cent due her, but asked her to be patient as she had been during the life of his father and mother; that because of depressed conditions the property would not bring 60 per cent. of its value; that they would try to sell the "Shamrock" lot and that it would nearly clear up all the debts; that there was no use for her to come to Ashland at present, as he would attend to her affairs respecting the loan.

On July 31, 1931, appellant wrote to appellee to the effect that she had received a letter advising her that the property of T. M. Howard, Sr., was going to be sold and would not be sufficient to cover his debts and that she had better go to Ashland. She asked that he look after her part of it, stating that she was very lenient with his parents; that she had been ill during the summer and on advice of her physician was going to the seashore for two weeks; and that if her health was sufficiently improved she would then go to Ashland to attend to her business, but assured him that she was not uneasy so long as he was at that end of the line. She made some reference to the fact that the sheriff was investigating her failure to list the note for taxation. She stated that she did not want to cause the family any trouble but wanted her money as soon as she could get it. She asked him to see after her part because she had no one to do anything for her.

Summing up, the evidence shows that appellee took his mother's place as indorser on the notes of his father, all of which were dated January 1 and due one day after date. The first renewal on the note on which his signature appeared was indorsed by him some time in March, and the next renewal was signed by him prior to the 10th of the following January, as is evidenced by Mrs. Moriarty's letter acknowledging receipt of it. In

conversations with appellee, Mrs. Moriarty indicated that she did not expect the note to be paid during the life of the maker but that it would be paid out of his estate, and that possibly appellee concurred in these views. In his letter to her he did not acknowledge individual liability but indicated that it would be paid out of his father's estate. It may be inferred from the record that the maker of the note was insolvent, and it is agreed that at no time between January 1 and the date of his death would he have had sufficient funds in the Ashland National Bank to pay the note if it had been presented there for payment. If there was a waiver of presentment for payment, it must be implied from these facts.

In the case of Meyers Co. v. Battle, 170 N. C. 168, 86 S. E. 1034, 1035, it is said:

"Presentment and demand at the specified bank are necessary in order to charge a drawer or indorser, in the absence of some good and sufficient reason for failing to make presentment there. One of those reasons is that the maker had no funds at the bank to meet the obligation. If the maker of a note payable at a bank has no funds in the bank when it falls due, demand of payment there is unnecessary."

To the same effect, see Sherer v. Easton Bank, 33 Pa. 134.

In the case of Bessenger v. Wenzel et al., 161 Mich. 61, 125 N. W. 750, 753, 27 L. R. A. (N. S.) 516, it is said:

"Any act, course of conduct, or language of the drawer or indorser calculated to induce the holder not to make demand or protest or give notice, or to put him off his guard, or any agreement by the parties to that effect, will dispense with the necessity of taking these steps, as against any party so dealing with the holder."

It was held, however, that the holder would not be released from presentment because the maker had no funds in the bank unless the indorser knew of that fact.

From the foregoing and other cases from foreign jurisdictions, it will be seen that there is a conflict of authority respecting the necessity for presentment for payment when the maker had no funds in the bank.

In the recent case of Greenwade v. First National Bank of Louisa, 240 Ky. 60, 41 S. W. (2d) 369, 371, it is said:

> "It is true that a mere accommodation indorser, even though he knows that the note will not be paid when presented to the maker because of the maker's insolvency, is entitled to notice of protest."

The opinion cites Taylor v. Bank of Illinois, 23 Ky. (7 T. B. Mon.) 576, where it was held in effect that an accommodation indorser is entitled to notice of dishonor, although he knew that the drawee had no funds of the drawer and there was no reasonable expectation that the bill would be honored.

In the case of Slack v. Longshaw, 8 Ky. Law Rep. 166, it is said:

> "When the action is against the drawer he will not be permitted to defend on the ground that there was no demand or notice of protest, if he had no right to require or expect the bill to be paid; and it seems that the mere fact that he had no funds, and that none were provided to meet the bill, is prima facie sufficient to show that he had no such right. * * * But even in that case the endorser is entitled to strict demand and notice, unless he has participated in the fraud of the drawer."

In the Greenwade Case it appears that the notes in controversy were renewed from time to time, and the renewal notes would be delivered to the makers or to some of the indorsers and would be passed from one to another until all the signatures were secured, when they would be delivered to the bank; some time being required to secure the signatures and delivery of the renewal notes. It was said:

> "This method of executing and delivering the renewal notes strongly indicates that notice of protest and dishonor was intended to be and was thereby waived by the parties interested in them."

We find it to be a general rule that insolvency or bankruptcy of the persons primarily liable does not excuse demand or notice of dishonor, even though the indorser knows of such insolvency or bankruptcy. Cristina v. Mattenberger (Cal. App.) 289 P. 934, affirmed 212 Cal. 670, 300 P. 450; Foundry Mfg. Co. v. Farr, 96

Vt. 382, 119 A. 885. In the latter case it was held that this rule applies even though the instrument was indorsed when overdue. This rule has also been applied to corporate officers acting as indorsers for the corporation. Buehner v. Sehlhorst, 149 Md. 474, 132 A. 70.

To the contrary, however, see Waterproof Paper Co. v. Van Buren, 182 Wis. 640, 197 N. W. 338; Bassenhorst v. Wilby, 45 Ohio St. 333, 13 N. E. 75. In the case of Farmers' Bank & Trust Co. v. Dent et al., 206 Ky. 405, 267 S. W. 202, 204, it is said:

"The waiver may result from any words and acts which by fair and reasonable construction are of such character as will justify the holder in assuming that the indorser intended to dispense with notice, or induce the holder to forego the usual steps necessary to fix the liability of the indorser. 8 C. J. 699. Inasmuch, however, as waivers are in derogation of the admitted rights of an indorser, they are construed rather strictly, and will not be extended beyond the fair import of the terms used, nor will they be inferred from doubtful acts or language."

In Baker v. Valentine, 216 Ky. 801, 288 S. W. 771, it was held that waiver of presentment and notice of dishonor must be established by clear and satisfactory proof. To the same effect, see Mechanics' & Farmers' Savings Bank v. Katterjohn, 137 Ky. 427, 125 S. W. 1071, Ann. Cas. 1912A. 439.

In the latter case it was held in effect that a promise to renew is not an admission of liability upon the part of the indorser, because he might have a willingness to renew but not to pay.

In the case of Maynard Trust Co. v. Furbush, 243 Mass. 190, 137 N. E. 270, it was held in substance that giving of renewal notes as maturity notes become payable, coupled with the fact that the indorser was treasurer of the corporate maker and director of the corporate payee, did not constitute waiver of presentment for payment.

If an action had been brought against the maker of the note in controversy and he had interposed as a defense failure of presentment and notice of dishonor, the evidence as to the custom and course of dealings

between him and Mrs. Moriarty is such as would lead her to think that it was not expected or necessary that she should take such steps in order to fix the liability of the maker; but when we come to a consideration of evidence concerning the actions and course of conduct between appellant and appellee, an entirely different situation is presented. In order to fix liability on him and to hold that he waived presentment of payment would require too many doubtful inferences and implications; however, it must be admitted that a close question is presented and the balance might turn either way.

It is a rule of general application that while the appellate court is not bound by a chancellor's finding of fact but will review and consider the evidence for itself, it will not disturb a finding supported by the weight of the evidence or where, on a consideration of the entire record, there is merely a doubt as to the correctness of the chancellor's finding. In view of this rule and the further rule running through all foreign and domestic cases that a waiver being a derogation of an indorser's rights, clear and convincing proof will be required to show waiver and to fix liability on the indorser, we would not be authorized to disturb the chancellor's decision.

Judgment affirmed.